IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL J. SOTAK,

    Plaintiff,

  v.

BAXTER HEALTHCARE CORPORATION;
BAXTER INTERNATIONAL AND
SUBSIDIARIES PENSION PLAN,

    Defendants.

10cv0246
**ELECTRONICALLY FILED**

# MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment. Plaintiff brought this Employee Retirement Income Security Act ("ERISA") action seeking additional benefits under defendants' pension plan. Defendants calculated plaintiff's disability pension benefit (in part) based on plaintiff's 1985 earnings. Plaintiff contends that his disability pension benefit should have been calculated using his 1986 earnings.

For the reasons set forth in greater detail below, we will grant plaintiff's Motion for Summary Judgment and deny defendants' Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

The following relevant facts are not contested:

Plaintiff began to work for defendant Baxter's predecessor, Dade/American Hospital Supply Company ("AHSC"), in 1970. Doc no. 30, ¶1. From the date of his hire in 1970, plaintiff worked continuously for defendant Baxter and its predecessor, until May of 1987, when he stopped working due to health problems. *Id.* As a result of his health problems, plaintiff filed

for Social Security Disability ("SSD") benefits and for disability benefits under a group disability plan administered by defendants. *Id.*, at ¶10.

In 1985, Dade/AHSC merged with defendant Baxter and effective January 1, 1986, the Baxter Travenol Laboratories, Inc. and Subsidiaries Pension Plan ("the 1986 Plan") was established. *Id.*, at ¶2. The 1986 Plan was amended and restated and the new plan became effective on January 1, 1987 ("the 1987 Plan"). *Id.* The 1987 Plan was revised, and the new plan became effective on January 1, 2007 ("the 2007 Plan"). *Id.*

Plaintiff was last employed by defendant Baxter when the 1987 Plan was effective. *Id.* Plaintiff reached the age of retirement (65 years old) on November 1, 2008 when the 2007 Plan was effective. *Id.*

Although the parties agree that plaintiff is entitled to disability benefits under one of the Plans, they disagree as to which plan (the 1987 Plan or the 2007 Plan) controls the benefit amount.

The pertinent parts of the relevant sections of the 2007 Plan are as follows:

> **1.3 Benefits of Participants Terminating Employment prior to Effective Date.** The benefits payable with respect to Participants whose benefits were in pay status prior to the Effective Date and who do not again become Eligible Employees will in all respects continue to be governed by the terms and conditions of the Plan as in effect at the time such benefits commenced. Except to the extent expressly provided to the contrary in an applicable supplement or elsewhere in the Plan, the Accrued Benefits, eligibility, vesting and other rights of other Participants incurring a Termination of Employment prior to the Effective Date will continue to be governed by the terms and conditions of the Plan as in effect at the time of such Termination of Employment.
>
> \*   \*   \*
>
> **2.45 "Termination of Employment"** occurs when a person ceases to be an Employee. The Termination of Employment for an Employee incurring a separation from service prior to May 1, 1996, will occur as of the last day he is listed on an Employer's payroll.

Doc. no. 20-4, at BAT00182; and doc. no. 20-5, at BAT00203.

Based upon these two sections found in the 2007 Plan, plaintiff contends that the 1987 Plan's definition of "disability" applies. "Disability" is defined by the 1987 Plan as follows:

> 2.15 <u>"Disability"</u> means a mental or physical condition which renders a Participant eligible for and in actual receipt of a disability benefit under the Federal Social Security Act.

Doc. no. 20-3, at BAT00106. In addition, plaintiff contends that eligibility for, and the amount of pension benefits due and owing to him, is governed by the 1987 Plan which states in pertinent part:

> Section 4.4 <u>Disability Retirement</u>. Subject to the limitations of 15.10 and 15.11, a Participant who is an Eligible Employee and who incurs a Disability after he has completed at least ten Years of Vesting Service shall be entitled to his Accrued Benefit determined as of his Normal Retirement Date in accordance with the following:
>
> (a) <u>Amount of Benefit</u>. The Accrued Benefit payable under this Section 4.4 shall be determined by using the Participant's Years of Benefit Service earned at the time of his Disability plus the Years of Benefit Service that he would have earned had he continued in employment as an Eligible Employee from the time of his Disability until his Normal Retirement Date. The Accrued Benefit shall be calculated using the Participant's Compensation in the Plan Year preceding his Disability for the first year of Disability and for each year thereafter in order to calculate Participants Average Monthly Compensation.

Doc. no. 20-3, at BAT00120.

Defendants disagree that the definition of "Termination of Employment" is as plaintiff purports, and states that Section 2.45 must be read in its entirety, specifically the portion of Section 2.45 which reads, "For purposes of determining his Accrued Benefit under Section 4.4(a), a Disabled Participant's Termination Date is his Normal Retirement Date, or if earlier, the date he elects to commence his Disability Retirement under Section 4.4(b)." Doc. no. 20-5, at BAT00203.

3

In addition, defendants contend "disability" is not controlled by the 1987 Plan; to the contrary, defendants contend the term "disability" should be defined by the 2007 Plan which indicates as follows:

> **2.14 "Disability"** means a mental or physical condition which occurs prior to a Participant's Termination of Employment which entitles the Participant to disability benefits under the federal Social Security Act. To qualify as a Disability, the Participant must be determined to be disabled by the Social Security Administration as of a date which falls on or before his Termination of Employment (determined without regard to Section 2.45(b)).

Doc. no. 20-4, at BAT00194. Defendants also disagree that the 1987 Plan governs plaintiff's eligibility for, and the amount of pension benefits due and owing to him; instead, defendants contend plaintiff's eligibility for, and amounts due and owing to him, are governed by the 2007 Plan. Defendants rely on several sections in the 2007 Plan to reach this conclusion, and those sections are set forth herein in pertinent part:

> **4.4 Disability Retirement.** A Participant is entitled to a Disability Pension Benefit if he incurs a termination of employment described in Section 2.45(b)[.]
>
>     \*  \*  \*
>
> (b) **Amount of Benefit.** . . .The Accrued Benefit payable under this Section 4.4 will be determined by using the Participant's Years of Service earned at the time of Disability, plus the Years of Service that he would have earned had he continued in employment as an Eligible Employee from the time of his Disability until his Normal Retirement Date, provided that such Participant is actually receiving disability payments from the Social Security Administration. *The Accrued Benefit will be calculated using the Participant's Compensation in the Plan Year preceding his Disability for the first year of Disability and for each year thereafter up to the earlier of the Participant's Termination of Employment or the first day of the month following his Normal Retirement Date* in order to calculate the Participant's Average Monthly Compensation.

Doc. no. 20-5, at BAT00211 (emphasis added).

The parties agree that plaintiff filed for SSD benefits in August of 1987, several months after he stopped working for defendant Baxter in May of 1987. Doc. no. 30, ¶10. The parties also agree that in 1989, an administrative law judge awarded SSD benefits to plaintiff and assigned a disability date of November 26, 1986. *Id.* at ¶11. Plaintiff first received SSD benefits in May, 1987, following a five-month statutory waiting period. *Id*. As noted above, plaintiff worked for defendant Baxter until May of 1987.

Defendants admit that in 2003, they provided plaintiff with an estimate of his pension benefit. *Id.*, ¶9. The estimate was based upon plaintiff's 1986 earnings. *Id*. On September 16, 2008, the date plaintiff turned 65, defendants sent plaintiff a "corrected estimate" indicating they had erred by using his 1986 earnings to calculate his benefit. *Id*. Defendants explained that they had erroneously based their determination on the fact that plaintiff received SSD benefits in May 1987 prompting them to use his 1986 earnings; when instead, they should have used the date plaintiff had been deemed "disabled" by the Social Security Administration (November 26, 1986), thus requiring them to use plaintiff's 1985 earnings. *Id.*

Plaintiff contends that he is entitled to pension benefits calculated by using his 1986 earnings. Doc. no. 27, pp. 3-6. Defendants contend that plaintiff is entitled to pension benefits calculated by using his 1985 earnings. Doc. no. 17, pp. 9-12.

## II. STANDARD OF REVIEW

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).

5

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party. Fed. R. Civ. P. 56(e)(2).

To demonstrate entitlement to summary judgment, defendant, as the moving party, is not required to refute the essential elements of the plaintiff's cause of action. Defendant needs only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action. If plaintiff fails to provide such evidence, then he is not entitled to a trial, and defendants are entitled to summary judgment as a matter of law. *Id*.

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law. It is on this standard that the court has reviewed defendants' motion and plaintiff's response thereto.

### III. DISCUSSION

**A. Scope of Review in ERISA Matters**

For actions brought under 29 U.S.C. § 1132(a)(1)(B), such as the matter presently before this Court, the standard of review a trial court must apply was established in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). In *Firestone*, the Supreme Court held that "a denial

of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 115. When the administrator has discretionary authority to determine eligibility for benefits, the decision must be reviewed under an arbitrary and capricious standard. *Id*.

In *Saltzman v. Independence Blue Cross*, No. 09-2965, 2010 WL 2340182 (3d Cir. June 10, 2010), the United States Court of Appeals for the Third Circuit recently reiterated, that "[u]nder the arbitrary and capricious standard, 'the district court may overturn a decision of the plan administrator only if it is without reason, unsupported by the evidence, or erroneous as a matter of law.'" *Saltzman* at *3, quoting *Mitchell v. Eastman Kodak Co*., 113 F.3d 433, 439 (3d Cir.1997). In *Doroshow v. Hartford Life and Acc. Ins. Co*., 574 F.3d 230, 234 (3d Cir. 2009), the Court of Appeals noted that the scope of this review is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." See also *Salzman* at *3 ("[T]his review is deferential to the plan administrator, [thus] the district court must not substitute its own judgment for the judgment of the administrator.").

The Court of Appeals for the Third Circuit has also held that when deciding whether an administrator's determination is without reason, unsupported by the evidence, or erroneous as a matter of law, it will apply the following rules of construction of contracts to ERISA plans: the plan must be considered as a whole; straightforward, unambiguous language should be given its natural meaning; and, if a specific provision found in the plan conflicts with a general provision, the specific provision should control. *Saltzman* at *5, citing *Aramony v. United Way of America*, 254 F.3d 403, 413 (2d Cir. 2001) (quoting Restatement (Second) of Contracts § 203(c)) (applying this rule of construction to interpret terms of an ERISA pension plan); and *Petroleos*

7

*Mexicanos Refinacion v. M/T King A*, 554 F.3d 99, 113 (3d Cir. 2009) ("[T]he more specific term should usually be held to prevail over the more general term." 5 Corbin on Contracts § 24.23 (2007)).

As noted by the Court of Appeals in *Bill Gray Enterprises, Inc. Employee Health and Welfare Plan v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001) :

> Whether terms in an ERISA plan document are ambiguous is a question of law.  A term is "ambiguous if it is subject to reasonable alternative interpretations."  *Taylor v. Cont'l Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232 (3d Cir.1991); *Mellon Bank, N.A. v. Aetna Bus. Credit Inc.*, 619 F.2d 1001, 1011 (3d Cir.1980).  In determining whether a particular clause in a plan document is ambiguous, courts must first look to the plain language of document. *In Re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 902 (3d Cir.1995) ("The written terms of the plan documents control....").  If the plain language of the document is clear, courts must not look to other evidence. *In re Unisys Corp. Long-Term Disability Plan ERISA Litig.*, 97 F.3d 710, 715 (3d Cir.1996) (quoting *Mellon Bank*, 619 F.2d at 1013) (" 'Our approach does not authorize a trial judge to demote the written word to a reduced status in contract interpretation.  Although extrinsic evidence may be considered under proper circumstances, the parties remain bound by the appropriate objective definition of the words they use to express their intent....' "). But if the plain language leads to two reasonable interpretations, courts may look to extrinsic evidence to resolve any ambiguities in the plan document.  However, "it is inappropriate to consider such [extrinsic] evidence when no ambiguity exists." *Epright v. Envtl. Res. Mgmt, Inc. Health and Welfare Plan, ERM*, 81 F.3d 335, 339 (3d Cir. 1996).
>
> To recapitulate, in reviewing a plan administrator's interpretation of an ERISA plan we must first examine whether the terms of the plan document are ambiguous. See generally *In re Unisys Corp. Long-Term Disability Plan ERISA Litig.*, 97 F.3d at 715-16. If the terms are unambiguous, then any actions taken by the plan administrator inconsistent with the terms of the document are arbitrary. But actions reasonably consistent with unambiguous plan language are not arbitrary. If the reviewing court determines the terms of a plan document are ambiguous, it must take the additional step and analyze whether the plan administrator's interpretation of the document is reasonable.  *Spacek v. Maritime Ass'n ILA Pension Plan*, 134 F.3d 283, 292 (5th Cir.1998).

**B. Application of the Scope of Review to the 1987 and 2007 Plans**

   **1. Abuse of Discretion Standard – Defendants' 1987 and 2007 Plans**

Turning to the instant matter, the Plan Administrator had discretionary authority to determine eligibility for benefits and interpret terms under the Plan. Accordingly, this Court shall apply the abuse of discretion standard of review. The abuse of discretion standard requires affirmation by this Court unless the Administrator's decision is found to be arbitrary and capricious, meaning "without reason, unsupported by the evidence, or erroneous as a matter of law." This standard defers to the Plan Administrator's decision to utilize plaintiff's 1985 earnings (as opposed to his 1986 earnings), and prohibits this Court from substituting its own judgment for the judgment of the Administrator.

The Court begins by noting that the crux of each parties' argument centers on the language found in the 2007 Plan. Defendants essentially claim the 2007 Plan alone determines the accrued benefit payable to plaintiff and suggest that the unambiguous terms of the 2007 Plan lead to the conclusion that plaintiff's 1985 earnings should be used to calculate that benefit. Plaintiff, on the other hand, agrees that the 2007 Plan, which was in effect at the time he attained retirement age, provides some of the language necessary to determine his accrued benefit; but he suggests that the terms of the 2007 Plan unambiguously points to the 1987 Plan which in turn, unambiguously establishes that his 1986 earnings should be used to calculate his accrued benefit.

Given the parties respective positions, this Court must first determine whether the particular clauses in the 2007 (and 1987) Plans are ambiguous. The main controversy between the parties centers on section 2.45 of the 2007 Plan, but to understand that section, section 1.3 of the 2007 Plan (which is not in controversy) must be examined. Section 1.3 states in pertinent part:

> **1.3 Benefits of Participants Terminating Employment prior to Effective Date.**
> . . . Except to the extent expressly provided to the contrary . . . the Accrued Benefits, . . . and other rights of . . . Participants incurring a Termination of Employment prior to the Effective Date will continue to be governed by the terms and conditions of the Plan as in effect at the time of such Termination of Employment.

Doc. no. 20-4, at BAT00182.

The plain and unambiguous meaning of this clause found in section 1.3 is that in order for plaintiff to fall within the description of a "Participant incurring a Termination of Employment prior to Effective Date," plaintiff had to incur a "Termination of Employment" before the effective date of the 2007 Plan. This Court finds no ambiguity in section 1.3.

Moreover, if plaintiff is deemed to be a "Participant incurring a Termination of Employment prior to Effective Date," then under the facts of this case, the 1987 Plan will govern the calculation of plaintiff's Accrued Benefit (except to the extent the 2007 Plan expressly provides to the contrary) because it was the "Plan as in effect at the time of such Termination of Employment." Thus, the question whether plaintiff is a "Participant incurring a Termination of Employment prior to Effective Date," turns on the definition of "Termination of Employment."

Section 2.45 of the 2007 Plan defines "Termination of Employment". The relevant portion of section 2.45 upon which plaintiff relies reads as follows:

> **2.45 "Termination of Employment"** occurs when a person ceases to be an Employee. The Termination of Employment for an Employee incurring a separation from service prior to May 1, 1996, will occur as of the last day he is listed on an Employer's payroll. . . .

Plaintiff contends that this portion of section 2.45 quoted above, clearly establishes that he incurred a separation of employment and thus a "Termination of Employment" in May of 1987.

Defendants disagree that the definition of "Termination of Employment" is as simplistic as what the plaintiff proposes. To the contrary, defendants contend that additional portions of

Section 2.45 must be reviewed to correctly interpret "Termination of Employment."

Specifically, defendants point to the portions of Section 2.45 highlighted below:

> **2.45 "Termination of Employment"** occurs when a person ceases to be an Employee. The Termination of Employment for an Employee incurring a separation from service prior to May 1, 1996, will occur as of the last day he is listed on an Employer's payroll. The termination of Employment of an Employee incurring a separation from service after April 30, 1996 will occur as of the date of such separation, regardless of whether any post-separation pay is owed to such Participant or included in such Participant's Compensation. . . . **The foregoing provisions also are subject to the following rules**:
>
>       \*      \*      \*
>
>     (b) **Disability.** Effective for disabilities determined by the Social Security Administration to have occurred after September 30, 1996 a Participant's Termination of Employment, for purposes of determining whether an Employee is entitled to a Disability Pension Benefit under Section 4.4, occurs as of the end of the six-month period immediately following his separation from service with an Employer during which he is receiving disability pay. If no disability date is indicated by the Social Security Administration's award letter, then his disability date will be deemed to occur after September 30, 1996 as long as the Social Security award letter is dated after March 31, 1997. If the award letter is dated prior to April 1, 1997, the disability date will be deemed to occur prior to October 1, 1996 and the six-month period will be increased to twelve months. **For purposes of determining his Accrued Benefit under Section 4.4(a), a Disabled Participant's Termination Date is his Normal Retirement Date, or if earlier, the date he elects to commence his Disability Retirement under Section 4.4(b)**.

Doc. no. 20-5, at BAT00203.

The Court finds that Section 2.45 is in fact, plain and unambiguous. Based on the text set forth in section 2.45, plaintiff's "<u>Termination of Employment</u>" occurred in May of 1987 when he ceased to be an employee. However, for purposes of determining when his disability retirement pension benefits would accrue, plaintiff's "<u>Termination Date</u>" is his normal retirement date. To put a finer point on this distinction, subpart "(b)" of Section 2.45, in its entirety, is wholly

11

concerned with the onset date that a participant's disability retirement pension benefits will actually accrue.[1]

Because Section 1.3 uses the phrase "Termination of Employment" and not "Termination Date," this Court concludes that plaintiff, who incurred "a Termination of Employment" in May of 1987, which was well "prior to the Effective Date" of the 2007 Plan, "will continue to be governed by the terms and conditions of the Plan as in effect at the time of such Termination of Employment" – *i.e.* the 1987 Plan.

Under the 1987 Plan, "disability" is defined as:

> 2.15 <u>"Disability"</u> means a mental or physical condition which renders a Participant eligible for and in actual receipt of a disability benefit under the Federal Social Security Act.

Doc. no. 20-3, at BAT00106. The parties agree that in 1989, an administrative law judge deemed plaintiff disabled for SSD purposes finding him disabled as of November 26, 1986; but due to the statutory five-month waiting period, plaintiff's SSD benefits commenced to be paid as of May, 1987. As noted above, plaintiff worked for defendant Baxter until May of 1987.

Given the plain and unambiguous meaning of "disability" under the 1987 Plan, plaintiff was "eligible for and in actual receipt of a [Social Security] disability benefit" as of May, 1987.

Next, Section 4.4 of the 1987 Plan describes the particulars associated with "disability retirement" in pertinent part as follows:

> Section 4.4 <u>Disability Retirement</u>. . . . a Participant who is an Eligible Employee and who incurs a Disability after he has completed at least ten Years of Vesting Service shall be entitled to his Accrued Benefit determined as of his Normal Retirement Date in accordance with the following:
>
> (a) <u>Amount of Benefit</u>. . . . The Accrued Benefit shall be calculated using the Participant's Compensation in the Plan Year preceding his Disability for the

---

[1] Despite the reference to Section 4.4(a) in this portion of the 2007 Plan, this Court finds it noteworthy that the 2007 Plan does not actually contain a Section 4.4(a). However, the 1987 Plan does contain a Section 4.4(a) which is discussed, *infra*.

>first year of Disability and for each year thereafter in order to calculate Participants Average Monthly Compensation.

Doc. no. 20-3, at BAT00120.

Thus, based on the plain and unambiguous language of Section 4.4(a) of the 1987 Plan, defendants should have taken into account plaintiff's earnings for 1986 – the year preceding "disability" which commenced (per the Plan's terms) in May of 1987 – when calculating his accrued disability retirement benefits.

Having established the plain meaning of the relevant sections of the 2007 and 1987 Plans, the Court notes that defendants' Administrator reached a different conclusion. Defendants argue that this Court may not interpose its own judgment in lieu of the Plan Administrator's under the scope of review established by *Firestone* and *Doroshow*. However, this Court has found the relevant sections of the two Plans to be unambiguous and thus, finds that the Administrator's interpretation of them to be in conflict with their plain meaning. As noted by the Court of Appeals for the Third Circuit in *Gourley,* if the terms are unambiguous, then any actions taken by the plan administrator inconsistent with the terms of the document are arbitrary and capricious, thus satisfying the abuse of discretion standard.

For this reason alone, this Court grants plaintiff's Motion for Summary Judgment and denies the defendants' Motion.

**2. Abuse of Discretion Standard – Overall Goal of Defendants' Plan**

However, this Court further notes that the *Firestone* Court also held that under the arbitrary and capricious standard, "if a benefit plan gives discretion to an administrator or a fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' " *Firestone*, 489 U.S. at 115. Accord, *Doroshow*, 574 F.3d at 233 (3d Cir. 2009).

13

Expounding upon its decision in *Firestone*, the Supreme Court in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343 (2008), rejected a conflict of interest review that requires a heightened arbitrary and capricious standard. In *Glenn*, a participant in a long-term disability insurance plan administered by Metropolitan Life Insurance Company (MetLife) challenged MetLife's determination that she was no longer eligible for benefits because she was not totally disabled. MetLife both funded the plan and had discretionary authority to determine the validity of an employee's benefits claim.

The *Glenn* Court held that the existence of a conflict did not change the standard of review from abuse of discretion to a more searching review. *Id*. at 2351. The Court further held:

> We believe that *Firestone* means what the word "factor" implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one. This kind of review is no stranger to the judicial system. Not only trust law, but also administrative law, can ask judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together. See Restatement § 187, Comment d; cf., e.g., *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-417, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (review of governmental decision for abuse of discretion); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (review of agency factfinding).
>
> In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance.

*Id*. Accord, *Doroshow*, 574 F.3d at 234 ("The Court in *Glenn* reiterated its position in *Firestone* that a reviewing court should consider the conflict of interest – but only as one consideration among many.").

It is unclear from the evidence before this Court whether defendants funded and administered their own plan; and thus, a conflict of interest is not a factor this Court can

consider. However, there is another factor that this Court considers to be important and weighs in favor of plaintiff.

Defendants repeatedly noted in their submissions to this Court that "[w]hen a Plan participant becomes disabled before reaching normal retirement age . . . the Plan projects the participant's earnings to normal retirement age using the earnings from the year before the employee became disabled . . . . This approach . . . is favorable to most disabled participants because they most often work only part of the year in which they become disabled." See doc. no. 17, pp. 1-2, 8; doc. no. 31, p. 3. See also, doc. no. 18, ¶30.

Plaintiff agreed that "the purpose of utilizing the earnings year for the year of employment prior to a participant's disability is to give the employee the benefit of what is likely to be a higher earnings year than the year in which that employee became disabled." See doc. no. 27, p. 5. See also, doc. No. 20-10, at BAT00460.

In short, the parties concur that the overall goal of the defendants' Plan is to provide the most financially beneficial recovery to participants who become disabled. This goal was usually accomplished by using a participant's earnings from the year before the participant became disabled. However, the parties also agree that in plaintiff's case, the year selected by the Plan Administrator (1985), did not provide the most financially beneficial recovery to plaintiff. Year 1986 provided the most financially beneficial recovery to plaintiff, and it was the year before plaintiff became disabled given the plain and unambiguous language set forth in the 2007 and 1987 Plans as described above.

Because defendants concede that the overall goal of the Plan is to provide the most financially beneficial recovery to participants who become disabled, but then interpreted the Plan in this particular case in such a way that: (1) plaintiff did not receive the most financially

15

beneficial recovery, and (2) the interpretation failed to comport with the plain and unambiguous meaning of the Plan, this Court finds this further evidences that defendants acted in an arbitrary and capricious manner.

## IV. CONCLUSION

Based on the foregoing law and authority, plaintiff's Motion for Summary Judgment shall be granted and defendants' Motion for Summary Judgment shall be denied. An appropriate order follows.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge


cc: All Registered ECF Counsel and Parties